# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AMIN ESMAEILI,<br><br>Petitioner,<br><br>v.<br><br>KRISTI NOEM, Secretary of the Department of Homeland Security, PAMELA JO BONDI, Attorney General, TODD M. LYONS, Acting Director, Immigration and Customs Enforcement, JESUS ROCHA, Acting Field Office Director, San Diego Field Office, CHRISTOPHER LAROSE, Warden at Otay Mesa Detention Center,<br><br>Respondents. | Case No.: 26-cv-0203-GPC-JLB<br><br>**ORDER GRANTING WRIT OF HABEAS CORPUS**<br><br>**[ECF No. 1]** |

Before the Court is Petitioner Amin Esmaeili's petition for a writ of habeas corpus. ECF No. 1. The matter has been fully briefed, and the Court finds the matter suitable for a decision based upon the briefing. The hearing scheduled for January 30, 2026, is VACATED. For the reasons outlined below, the petition is GRANTED.

///

**BACKGROUND**

On January 14, 2026, Petitioner filed a writ of habeas corpus. ECF No. 1. Respondents responded in opposition to the petition on January 20, 2026, ECF No. 3, and Petitioner filed a traverse on January 21, 2026.

Petitioner and his family came to the United States from Iran in 2006, when Petitioner was fourteen years old. ECF No. 1, at 1. In 2011, Petitioner was convicted of assault with a deadly weapon, burglary, and robbery, resulting in a prison sentence. ECF No. 3, at 2. Petitioner was released from custody in 2015 and transferred to ICE to initiate removal proceedings, wherein ICE issued Petitioner a Notice to Appear. *Id.* In August 2015, an immigration judge granted Petitioner's request for release from ICE custody on bond and with an ankle monitor. *Id.* In January 2017, Petitioner was arrested on a parole violation. *Id.* In August 2017, Petitioner was again transferred to ICE custody pending removal proceedings. *Id.*

In 2018, an immigration judge ordered Petitioner removed to Iran. ECF No. 1 at 3; ECF No. 3, at 3. However, Petitioner was provided with relief from removal to Iran under the Convention Against Torture. ECF No. 1, at 3; ECF No. 3, at 3. Petitioner was subsequently released in May 2018 under an order of supervision. ECF No. 1, at 3; ECF No. 3, at 3.

On January 6, 2025, Petitioner arrived at the San Ysidro, California Port of Entry and requested admission to the United States. ECF No. 3, at 3. Petitioner was detained and issued an expedited order of removal under the Immigration and Nationality Act as a noncitizen not in possession of a valid entry document at the time of application for entry. *Id.* San Diego Enforcement and Removal Operations ("ERO") decided not to proceed with the expedited removal order but instead effectuate Petitioner's 2018 order of removal. *Id.* Respondents contend that they do not intend to remove Petitioner to Iran. *Id.*

Petitioner has now been detained at Otay Mesa Detention Center for over twelve months. ECF No. 1, at 3. Respondents argue that, during this time, ICE has been working

as "expeditiously as possible" to execute Petitioner's removal, but has not yet identified a third country to which they can deport Petitioner. ECF No. 3, at 7. Petitioner has been told that he will continue to be detained while Respondents look for a third country for deportation. *Id.* at 5. He has not been given a chance to contest his re-detention. *Id.*

Over the past year in detention, Petitioner alleges that Respondents have told him he could be deported to Panama, Honduras, El Salvador, Guatemala, Turkey, or Germany. *Id.* Petitioner also alleges that ICE intends to deport him to a third country without providing Petitioner with adequate time to investigate and, if necessary, raise the possibility of persecution in that third country. *Id.*

Petitioner now asks for a writ of habeas corpus seeking both immediate release and an order enjoining Respondents from (1) re-detaining petitioner without first abiding by federal regulations and (2) removing Petitioner to a third country without first providing notice and an opportunity to be heard before an immigration judge. ECF No. 1, at 23-24.

### LEGAL STANDARD

Under 28 U.S.C. § 2241, a writ of habeas corpus may be granted to any petitioner who demonstrates that he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3); *see Rasul v. Bush*, 542 U.S. 466, 473 (2004). The writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004).

As explained by the Supreme Court, "the essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973); *Pinson v. Carvajal*, 69 F.4th 1059, 1067 (9th Cir. 2023) (habeas actions limited to challenges of the legality or duration of confinement). A petitioner bears the burden of demonstrating that "[h]e is in custody in violation of the Constitution or laws or treaties of the United States." *See Espinoza v. Sabol*, 558 F.3d 83, 89 (1st Cir. 2009).

/ / /

## JURISDICTION

Respondents maintain that this Court lacks jurisdiction over Petitioner's claims under 8 U.S.C. § 1252(g). ECF No. 3, at 4. Petitioner argues that § 1252(g) does not strip this Court of jurisdiction. ECF NO. 4, at 4.

8 U.S.C. § 1252(g) states that, with limited exceptions, "no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to *commence* proceedings, *adjudicate* cases, or *execute* removal orders against any alien[.]"  8 U.S.C. § 1252(g) (emphasis added); *Reno v. Am.-Arab Anti-Discrimination Comm.,* 525 U.S. 471, 482 (1999).  In that light, § 1252(g) is a narrow statutory provision that concentrates on those three discrete actions. *Reno*, 525 U.S. at 482.  Importantly, section 1252(g) "does not prohibit challenges to unlawful practices merely because they are in some fashion connected to removal orders," nor does it apply to "general collateral challenges to unconstitutional practices and policies used by the agency." *Ibarra-Perez v. United States*, 154 F.4th 989, 997-98 (9th Cir. 2025) (internal quotation marks and citation omitted).

Respondents argue that the § 1252(g) bar applies because Petitioner's claims seek to enjoin the decision to execute his order of removal. ECF No. 3, at 4. However, this mischaracterizes Petitioner's request. Petitioner is not challenging the execution of his removal order. Instead, Petitioner challenges (1) his re-detention without notice of why his supervision was revoked, (2) his continued detention pending his removal, and (3) the potential of a removal to a third country without adequate notice. ECF No. 4, at 4-5.

Petitioner's challenges do not fall within the three discrete actions identified in § 1252(g). Rather, they constitute challenges to unlawful and unconstitutional practices. *See Ibarra-Perez*, 154 F.4th at 997 (internal quotation marks and citations omitted); *see also Constantinovici v. Bondi*, --- F. Supp. 3d ---, 2025 WL 2898985, at *3 (S.D. Cal. Oct. 10, 2025) (finding the court has jurisdiction to consider challenges to detention as unlawful). Thus, § 1252(g) does not present a jurisdictional bar to the instant petition.

26-cv-203-GPC-MSB

**DISCUSSION**

Petitioner raises three arguments. First, Petitioner argues that his re-detention in January 2025 violates due process and federal regulations due to ICE's failure to comport with their own policies. ECF No. 1, at 11-14. Next, Petitioner argues that his ongoing detention violates the Supreme Court's decision in *Zadyvydas v. Davis*, 533 U.S. 678 (2001), because he has been detained for over twelve months and there is no evidence that he will be removed in the reasonably foreseeable future. *Id.* at 14-18. Lastly, Petitioner argues that due process requires that Respondents cannot deport him to a third country without first providing him notice and an opportunity to be heard *Id.* at 20-23.

Respondents contend that (1) Petitioner's detention is proper under *Zadvydas* because there is a significant likelihood of removal to a third country in the reasonably foreseeable future; and (2) Respondents' failure to comply with federal regulations do not require release from detention because Petitioner has failed to show prejudice. Respondents do not address Petitioner's arguments regarding what procedural protections must be provided to Petitioner prior to removal to a third country.

**I.    *Zadvydas v. Davis***

The Supreme Court has recognized a six-month presumptively reasonable period of detention after a noncitizen's removal order becomes final. *Zadvydas*, 533 U.S. at 701. "After this 6-month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Id.*

**A. Presumption of Reasonableness**

Respondents "acknowledge that the six-month period of presumptively reasonable detention has passed." ECF No. 3, at 6. Thus, Petitioner must now show that he has "good reason to believe" that he will not likely be deported in the foreseeable future.

**B. Good Reason to Believe**

"Good reason to believe does not place a burden upon the detainee to demonstrate no reasonably foreseeable, significant likelihood of removal or show that his detention is indefinite; it is something less than that." *Azzo v. Noem*, No. 3:25-CV-03122-RBM-BJW, 2025 WL 3535208, at *3 (S.D. Cal. Dec. 10, 2025) (quoting *Senor v. Barr*, 401 F. Supp. 3d 420, 430 (W.D.N.Y. 2019)). But Petitioner must offer more than "conclusory statements" suggesting he will not be removed. *Id.* (quoting *Andrade v. Gonzalez*, 459 F.3d 538, 543 (5th Cir. 2006)).

Petitioner has shown that he has "good reason to believe" that his removal is not significantly likely in the reasonably foreseeable future. First, Petitioner notes that ICE has had seven and a half years to deport him and has not done so. ECF No. 1, at 18. Petitioner further argues that ICE has "had the last year of his tenure in custody to focus its efforts to deport him," but has been unable to do so. *Id.* Over the past year, Petitioner alleges that the government has "tried and failed" to deport Petitioner to at least six countries, indicating that identifying a country for Petitioner's removal is proving to be a challenging task. *Id.* The Court finds that Petitioner has met his burden such that Respondents must now "respond with evidence sufficient to rebut that showing." *Zadvydas*, 533 U.S. at 701.

**C. Significant Likelihood of Removal in the Reasonably Foreseeable Future**

Respondents argue that they have sufficiently rebutted Petitioner's showing. Specifically, Respondents note that (1) "recent developments in international relations between the United States and several other countries have made probable ICE's removal of immigrants . . . that it previously was unable to remove to third countries," ECF No. 3, at 7; (2) "ICE has worked diligently to identify an alternate country for removal" including requesting repatriation to several countries and seeking assistance from Removal and International Operations (RIO) to identify a third country for removal, *id.*; and (3) "[e]vidence of progress, albeit slow progress, in negotiating a petitioner's repatriation will satisfy *Zadvydas* unless the petitioner's detention grows unreasonably lengthy," *id.* at 8. The Court disagrees.

Respondents have not presented any evidence that any country to which the government has reached out—either Mexico, the United Arab Emirates, or Qatar—has provided any indication that it might accept Petitioner. Indeed, the only response they have received is Panama's refusal to accept Petitioner. ECF No. 3, at 7. Additionally, beyond the simple fact that Respondents have asked these countries to accept Petitioner, Respondents have provided no information regarding the countries' likelihood to accept Petitioner, no estimate as to when the countries might respond, and no estimate as to how long after response removal might be effectuated. This Court has found that "[g]eneral indications that U.S. agencies have been in discussions with [target countries] regarding repatriation efforts do not indicate that those discussions will result in the timely removal of Petitioner, as it is unclear whether those efforts will be successful." *Lopez-Cacerez v. McAleenan*, Case No. 19-cv-1952-AJB-AGS, 2020 WL 3058096, at *6 (S.D. Cal. June 9, 2020) (quoting *Zhao v. Kelly*, No. CV 17-777-BRO (KES), 2017 WL 1591818, at *4 (C.D. Cal. Apr. 27, 2017)). If anything, Respondents' contentions that ICE has been working as "expeditiously as possible" over the past twelve months to effectuate Petitioner's removal but has failed to do so leads the Court to conclude that Petitioner's removal is complex and will not be resolved in the near future. *See* ECF No. 3, at 7.

Thus, the Court finds that Respondents have "offered little more than generalizations regarding the likelihood that removal will occur," *Azzo*, 2025 WL 3535208, at *3 (quoting *Kamyab v. Bondi*, No. C25-389RSL, 2025 WL 2917522, at *4 (W.D. Wash. Oct. 14, 2025)). Accordingly, Respondents have not met their burden to "respond with evidence sufficient to rebut" Petitioner's showing. *Zadvydas*, 533 U.S. at 701. Petitioner's detention is therefore no longer reasonable or authorized by statute, and Petitioner must be released from custody under the conditions of his most recent order of supervision. *See*, *e.g.*, *Nguyen v. Scott*, 796 F. Supp. 3d 703, 739 (W.D. Wash. 2025); *Vlasov v. Bondi*, No. 25-CV-1342-AJB-MSB, 2025 WL 2258582, at *3 (S.D. Cal. Aug. 7, 2025); *Vishal v. Chestnut*, No. 1:25-CV-01469-SAB-HC, ---F. Supp. 3d---, 2025 WL 3511815 (E.D. Cal. Dec. 8, 2025);

26-cv-203-GPC-MSB

*Ndandu v. Noem*, No. 3:25-CV-02939-RBM-MSB, 2026 WL 25848, at *6 (S.D. Cal. Jan. 5, 2026).

## II.   Agency Regulations and Due Process

Petitioner also argues that his detention is unlawful and violates due process because Respondents revoked his release without providing Petitioner with the reasons for his re-detention or a prompt interview. ECF No. 1, at 13. Though Respondents concede that no notice or interview was provided, they argue that Petitioner has failed to demonstrate any constitutional violation or prejudice from Respondents' failure to follow their own regulations. ECF No. 3, at 8-9.

While the government retains significant discretion to enforce the immigration laws, *see Diaz v. Wofford*, No. 1:25-CV-01079 JLT EPG, 2025 WL 2581575, at *7 (E.D. Cal. Sept. 5, 2025), the "the government's discretion to incarcerate non-citizens is always constrained by the requirements of due process." *Hernandez v. Sessions*, 872 F.3d 976, 981 (9th Cir. 2017). The Due Process Clause of the Fifth Amendment provides that no person shall be "deprived of life, liberty, or property, without due process of law," U.S. Const. Amend. V, and "[f]reedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). "The fundamental requirements of procedural due process are that a person be afforded notice and opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Constantinovici v. Bondi*, --- F. Supp. 3d ---, No. 3:25-CV-02405-RBM-AHG, 2025 WL 2898985, at *4 (S.D. Cal. Oct. 10, 2025) (quoting *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976)). Due process rights apply to noncitizens, including those whose presence in the United States is unlawful. *Zadvydas*, 533 U.S. at 693.

The Government has promulgated regulations concerning the release—and revocation of that release—of noncitizens who, like Petitioner, are subject to a final removal order. *See* 8 C.F.R. § 241.4; 8 C.F.R. § 241.13. These regulations "were intended

26-cv-203-GPC-MSB

to 'provide due process protections to [noncitizens] following the removal period as they are considered for continued detention, release, and then possible revocation of release[.]'" *Constantinovici*, --- F. Supp. 3d ---, 2025 WL 2898985, at *5 (quoting *Santamaria Orellana v. Baker*, Civil Action No. 25-1788-TDC, 2025 WL 2444087, at *6 (D. Md. Aug. 25, 2025)). The regulations provide that, upon revocation of release, a noncitizen will be (1) notified of the reasons for revocation of his release, and (2) promptly given an initial informal interview to afford the noncitizen an opportunity to respond to those reasons. 8 C.F.R. § 241.4(l)(1) & § 241.13(i)(3).

Respondents do not contest that they violated the notice and interview requirements of 8 C.F.R. §§ 241.4 and 241.13. ECF No. 3, at 8 ("Respondents acknowledge that Petitioner was not provided a notice of revocation or informal interview after he was re-detained"). However, they argue that Petitioner has not established a constitutional violation or that he was prejudiced by Respondents' conduct. ECF No. 3, at 9-11. Respondents misstate the law. This Court has held as follows:

> [T]here are, for present purposes, two types of regulations: (1) those that protect fundamental due process rights, and (2) [ ] those that do not." *United States v. Raya-Vaca*, 771 F.3d 1195, 1205 (9th Cir. 2014), *abrogated on other grounds by Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103 (2020). "A violation of the first type of regulation . . . implicates due process concerns even without a prejudice inquiry." *Id.* (holding that where "the regulation violation . . . constituted a denial of [the defendant's] right to notice and an opportunity to respond, no showing of prejudice [was] necessary to establish a due process violation"). "There can be little argument that ICE's requirement that noncitizens be afforded an informal interview . . . derives from the fundamental constitutional guarantee of due process." *Ceesay v. Kurzdofer*, 781 F. Supp. 3d 137, 165 n.26 (W.D.N.Y. 2025). Accordingly, Respondents' violation "implicates due process concerns even without a prejudice inquiry." *Raya-Vaca*, 771 F.3d at 1205.

*Azzo*, 2025 WL 3535208, at *5.

9

26-cv-203-GPC-MSB

Furthermore, Petitioner has been prejudiced. Sections 241.4 and 241.13 "were intended to provide due process protections" to noncitizens in Petitioner's circumstance. *Constantinovici*, --- F. Supp. 3d ---, 2025 WL 2898985, at *5 (internal quotation marks and citation omitted). By failing to comply with these regulations, Respondents "prejudiced interests of [Petitioner] which were protected by the regulation[s]." *Azzo*, 2025 WL 3535208, at *6 (quoting *United States v. Calderon-Medina*, 591 F.2d 529, 531 (9th Cir. 1979)). Thus, Petitioner was prejudiced by ICE's failure to comply with its own regulations. *See Azzo*, 2025 WL 3535208, at *5.

It is well-established that government agencies are required to follow their own regulations. *Constantinovici*, --- F. Supp. 3d ---, 2025 WL 2898985, at *5 (citing *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 268 (1954); *United States v. Ramos*, 623 F.3d 672, 683 (9th Cir. 2010)). District courts across the country have "determined that where ICE fails to follow its own regulations in revoking release, the detention is unlawful and the petitioner's release must be ordered." *Rokhfirooz v. LaRose*, --- F. Supp. 3d ---, 2025 WL 2646165, at *4 (S.D. Cal. Sept. 15, 2025) (collecting cases); *see*, *e.g.*, *K.E.O. v. Woosley*, No. 4:25-cv-74-RGJ, 2025 WL 2553394, at *7 (W.D. Ky. Sept. 4, 2025) (noting "courts across the country have ordered the release of individuals" in ICE custody where ICE "violated their own regulations"). This Court agrees and finds that ICE's failure to follow its own regulations constitutes an additional, independent grounds for Petitioner's release.

Respondents seek to distinguish the cases relied upon by Petitioner by asserting that they do not involve a noncitizen who "voluntarily self-deported after being ordered removed and subsequently presented himself to immigration officials upon re-entering the United States without proper documentation." ECF No. 3, at 11. However, Respondents do not elaborate on how these circumstances would impact the rights Petitioner now seeks to assert, nor do they provide any case law supporting their contention that these

circumstances require a different result. Thus, this undeveloped argument does not persuade the Court.

### III.   Third Country Removal

Lastly, Petitioner argues that "ICE's policies threaten [his] unlikely, but potentially immediate, removal to an unidentified third country without adequate notice and an opportunity to be heard." ECF No. 1, at 20. Respondents do not respond to Petitioner's arguments regarding the unconstitutionality of their third-country removal policies. However, they do confirm that ICE procedures provide that, when a third country is identified for resettlement, ICE will provide a notice of removal to the noncitizen. ECF No. 3, at 4. After the notice, ICE "will generally wait at least 24 hours," but in some cases just "six or more hours" before effectuating removal. *Id.* Respondents assert that Petitioner would be provided with reasonable means and opportunity to speak with an attorney prior to removal, and if Petitioner claims fear of removal to the identified country, he would be referred to an asylum officer. *Id.*

The policies outlined by Respondents reflect the guidance in a July 9, 2025, memo from ICE Director Todd Lyons.[1]  The memo provides that, if the United States has received credible assurances from the country of removal that a noncitizen removed from the United States will not be persecuted or tortured, then the noncitizen "may be removed without the need for further procedures." ECF No. 1, at 47. The memo further specifies that ICE will not affirmatively ask whether a noncitizen is afraid of being removed to the country of removal. *Id.*

"As several courts have held, the policies in the ICE memo are 'contrary to Ninth Circuit precedent.'" *Azzo*, 2025 WL 3535208, at *7 (quoting *Vu v. Noem*, No. 1:25-cv-01366-KES-SKO (HC), 2025 WL 3114341, at *9 (E.D. Cal. Nov. 6, 2025)); *see*

---

[1] Attached to the petition as Exhibit D. ECF No. 1, at 47.

*also Nguyen v. Scott*, 2025 WL 2419288, at *18–23; *Zakzouk v. Becerra*, No. 25-CV-06254-KAW, 2025 WL 2899220, at *4 (N.D. Cal. Oct. 10, 2025); *Baltodano v. Bondi*, No. C25-1958RSL, 2025 WL 2987766, at *2–3 (W.D. Wash. Oct. 23, 2025). Noncitizens are guaranteed due process in deportation proceedings, *Torres-Aguilar v. I.N.S.*, 246 F.3d 1267, 1270 (9th Cir. 2001), and "failing to notify individuals who are subject to deportation that they have the right to apply for asylum in the United States and for withholding of deportation to the country to which they will be deported violates the constitutional right to due process." *Andriasian v. I.N.S.*, 180 F.3d 1033, 1041 (9th Cir. 1999).  The burden is on the government "to provide a meaningful opportunity to be heard on asylum and withholding claims." *Nguyen v. Scott*, --- F. Supp. 3d ---, 2025 WL 2419288, at *18 (W.D. Wash. Aug. 21, 2025) (quoting *Aden v. Nielsen*, 409 F. Supp. 3d 998, 1009 (W.D. Wash. 2019)). Thus, a "noncitizen must be given sufficient notice of a country of deportation that, given his capacities and circumstances, he would have a reasonable opportunity to raise and pursue his claim for withholding of deportation." *Id.* (quoting *Aden*, 409 F. Supp. 3d at 1009).

Accordingly, this Court joins others in finding that ICE's third-country removal policies—as identified by Petitioner and confirmed by Respondents—violate the constitutional right to due process. Thus, Respondents must provide Petitioner with adequate notice and an opportunity to be heard before removing him to a third country.

## CONCLUSION

Considering the above, the Court holds as follows:

1. Petitioner's petition for writ of habeas corpus is hereby **GRANTED**.

2. Respondents are **ORDERED** to immediately release Petitioner from custody, subject to his most recent order of supervision.

3. Respondents are **PROHIBITED** from removing Petitioner to a third country without notice and a meaningful opportunity to be heard and to apply for fear-based relief prior to removal.

**IT IS SO ORDERED.**

Dated:  January 29, 2026

Hon. Gonzalo P. Curiel
United States District Judge

26-cv-203-GPC-MSB